# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 49

APRIL TERM, A.D. 2022

April 11, 2022

HAROLD WILLIAM BARNEY III,

Appellant
(Defendant),

v.

S-21-0122

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Crook County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Francis H. McVay, Senior Assistant Appellate Counsel. Argument by Mr. McVay.

*Representing Appellee:*
Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Senior Assistant Attorney General. Argument by Mr. Zintak.

*Before FOX, C.J., KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]   Harold William Barney III entered conditional guilty pleas to possession of marijuana, aggravated fleeing or attempting to elude, reckless endangering, and interference with a peace officer.  He reserved his right to appeal the district court's denial of his motion to suppress.  On appeal Mr. Barney challenges the constitutionality of his traffic stop under the Fourth Amendment to the United States Constitution.  We affirm.

## *ISSUES*

[¶2]   The dispositive issues are:

> I. Did Mr. Barney waive his Fourth Amendment claim by filing an untimely motion to suppress?

> II. Did the district court err in denying Mr. Barney's motion to suppress?

## *FACTS*

[¶3]   Around 4:36 p.m. on January 5, 2020, Crook County Sheriff's Office Sergeant Daniel Bush initiated a traffic stop after seeing a Nissan Rogue driving over the speed limit on Highway 585.  He activated his body camera to record the traffic stop.

[¶4]   Sergeant Bush explained to the driver, Mr. Barney, that he pulled him over for speeding.  Mr. Barney volunteered his driver's license and an Enterprise rental car pamphlet.  Sergeant Bush asked Mr. Barney about his travel plans and whether he had any weapons or anything illegal in the car.  Mr. Barney said he did not.

[¶5]   When Sergeant Bush returned to his patrol car, he opened the Enterprise pamphlet and realized it contained no rental agreement so he returned to the Nissan Rogue and asked Mr. Barney if he had a copy.  Mr. Barney said Enterprise had not given him any additional paperwork and then began searching his phone for an email from Enterprise.

[¶6]   Five minutes into the stop, Mr. Barney showed Sergeant Bush his phone and stated that all he had was a reminder email.  Sergeant Bush said he needed to see the rental agreement to ensure Mr. Barney legally possessed the rental car.  As Mr. Barney continued searching his phone, Sergeant Bush asked him more travel plan questions.  After a couple minutes, Mr. Barney stated he had his reservation, identification, and membership information, but he could not find the email Sergeant Bush needed and offered to call Enterprise himself.  Sergeant Bush did not take him up on his offer.

1

[¶7]     Eleven minutes into the stop, Sergeant Bush walked back towards his patrol vehicle to talk to Deputy Troy Skeens, who had arrived to assist.  Sergeant Bush explained to Deputy Skeens that Mr. Barney did not have a rental agreement.  He told the deputy that, based on Mr. Barney's behavior and answers to questions, he intended to conduct a free air dog sniff on the car.  Though Deputy Skeens did not have a computer, Sergeant Bush asked him to verify Mr. Barney's driver's license and they discussed calling Enterprise to confirm Mr. Barney legally possessed the car.

[¶8]     Sergeant Bush then returned to the Nissan Rogue and asked Mr. Barney if he had found the agreement.  Mr. Barney initially said he found something but then explained there had been an issue with him having two car reservations.  Sergeant Bush informed Mr. Barney he intended to walk his drug dog around the car while Mr. Barney continued searching his phone.  Before doing so, Sergeant Bush asked Mr. Barney whether he had anything illegal in the car and whether he would consent to a search.  Mr. Barney denied having anything illegal and did not consent.  During this exchange, Sergeant Bush's body camera recorded Deputy Skeens reading Mr. Barney's driver's license information to dispatcher Jan Pruet over the radio.

[¶9]     The trained drug dog alerted on the front passenger door of the Nissan Rogue about 14 minutes into the stop.  Around the same time, Ms. Pruet stated over the radio that Mr. Barney's license was valid.  She then began contacting Enterprise to determine whether Mr. Barney had a valid rental agreement.  The verification process was lengthy because she "had to go through several channels before [reaching Enterprise's] law enforcement section[.]"

[¶10]  While the rental agreement search was ongoing, Sergeant Bush spoke with Mr. Barney again.  During this exchange Mr. Barney denied having any drugs in the car or having previously smoked marijuana in it.  He eventually said he could not find an email identifying him as the person who rented the car.  Approximately 20 minutes into the stop, Sergeant Bush informed Mr. Barney the dog had alerted to the odor of a controlled substance in the car and asked him to exit so Sergeant Bush could search it.  Mr. Barney locked the doors and refused to exit.  Officers spent over 30 minutes trying to convince him to exit the car.  Near the end of this half hour and approximately 51 minutes into the stop Ms. Pruet confirmed over the radio that Mr. Barney had a valid rental agreement.

[¶11]  Eventually, Officer Chris Tomford of the Sundance Police Department approached Mr. Barney's car with a tool to break his car window.  When Mr. Barney saw this, he fled the scene.  During the ensuing high speed chase after dark Mr. Barney drove over 100 miles per hour on the interstate with no headlights and forced other vehicles off the interstate.  The chase continued from the interstate onto several nearby highways and roads.  Mr. Barney ran several stop signs along the way before crashing his car in a ditch.

[¶12] After Mr. Barney was transported for medical treatment, Sergeant Bush noticed fresh human footprints in the snow leading from the rental car into the woods. He followed the footprints and found multiple containers of marijuana hidden under brush near the tracks. The marijuana, including packaging, weighed over 13 ounces.

[¶13] The State charged Mr. Barney with nine crimes, including two counts of aggravated assault and battery (Counts 1 and 2); two counts of interference with a peace officer (Counts 3 and 4); felony possession of marijuana (Count 5); aggravated fleeing or attempting to elude (Count 6); reckless endangering (Count 7); interference with a peace officer (Count 8); and fleeing or attempting to elude (Count 9). The circuit court bound over all but Count 3 to the district court, where Mr. Barney pleaded not guilty.

[¶14] In February, the district court issued an initial case management order setting a March 12 deadline for all pretrial motions, including motions to suppress. In May, Mr. Barney's public defender moved to continue all proceedings because Mr. Barney wanted to hire private counsel. Private counsel entered an appearance and moved to extend the pretrial deadline, but the court never ruled on the request. It issued three amended case management orders, none of which extended the pretrial motion deadline.

[¶15] Mr. Barney filed his motion to suppress on June 29. He argued the following: Sergeant Bush did not have reasonable suspicion to expand the traffic stop's scope; Sergeant Bush's persistent questioning was improper and prevented him from finding his rental agreement; he produced an email confirming his rental car reservation; and the dog alert did not provide probable cause to search the car because Wyoming drug dogs cannot differentiate between marijuana and legal hemp.

[¶16] The State objected to Mr. Barney's motion to suppress as untimely. The State responded to the motion after the court scheduled a suppression hearing, primarily arguing that neither the alleged improper questions nor the dog sniff extended the stop because Mr. Barney could not produce his rental car agreement. It further argued Sergeant Bush had reasonable suspicion to prolong the stop for a dog sniff; the dog alert provided probable cause to search the car; and the exclusionary rule did not apply because Sergeant Bush did not act deliberately, recklessly, or with gross negligence.

[¶17] At the suppression hearing, Sergeant Bush testified about the traffic stop, and the court admitted a copy of his body camera video. In addition, Ms. Pruet testified about checking Mr. Barney's driver's license and contacting Enterprise to verify he legally possessed the car.

[¶18] The court denied Mr. Barney's motion to suppress on alternative grounds. First, it denied his motion as untimely because the initial case management order required all pretrial motions be filed no later than March 12 and Mr. Barney filed his motion on June 29. In the alternative, it denied his motion on the merits. The court reasoned that Sergeant

3

Bush's persistent questioning may have been improper but it did not prolong the traffic stop because officers could reasonably detain Mr. Barney until he produced a rental car agreement, which he never did. Further, Sergeant Bush conducted the dog sniff while Deputy Skeens continued the mission of verifying Mr. Barney's driver's license and determining whether he had a valid rental agreement.

[¶19] Mr. Barney pleaded guilty to Counts 5, 6, 7, and 8, conditioned on his right to appeal the denial of his motion. The court found him guilty, dismissed the remaining counts, and ordered that he had "the right to appeal the motion to suppress heard and denied by the court in accordance with [W.R.Cr.P.] 11(a)(2)[.]" It sentenced him to concurrent terms of imprisonment, suspended in favor of three years of probation. This appeal followed.

## *DISCUSSION*

### I.     *Mr. Barney did not waive his Fourth Amendment claim by filing an untimely motion to suppress.*

[¶20] The parties dispute whether Mr. Barney waived his Fourth Amendment claim by filing an untimely motion to suppress. According to the State, Mr. Barney waived any argument about the merits of his Fourth Amendment claim by filing an untimely motion to suppress and failing to establish good cause to excuse his waiver under W.R.Cr.P. 12(g). According to Mr. Barney, however, we should permit him to raise his Fourth Amendment claim because the district court allowed briefing on suppression, held a suppression hearing, and accepted his conditional guilty plea after the deadline.

[¶21] "While the question of waiver is often one of fact, when the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law which we consider *de novo*." *Rodriguez v. State*, 2019 WY 25, ¶ 16, 435 P.3d 399, 403 (Wyo. 2019) (citation omitted). Because the record is clear and the facts relating to waiver are not disputed, our review is de novo.

[¶22] On de novo consideration we conclude that because the court considered Mr. Barney's motion on the merits and such consideration provided the necessary foundation for Mr. Barney's conditional plea, the State cannot rely on the court's timeliness ruling as a basis to affirm.

[¶23] Neither party challenges the validity of Mr. Barney's conditional guilty plea, which requires (1) reservation of the right to appeal a specific issue in writing, (2) the State's consent, (3) the district court's approval, and (4) reservation of a dispositive issue. W.R.Cr.P. 11(a)(2); *Robinson v. State*, 2019 WY 125, ¶ 12, 454 P.3d 149, 155 (Wyo. 2019) (citing *Matthews v. State*, 2014 WY 54, ¶ 15, 322 P.3d 1279, 1281 (Wyo. 2014)). An issue is not dispositive unless reversal would require dismissal of the charges or suppression of the evidence necessary for conviction. *See Hardman v. State*, 2018 WY 24, ¶¶ 3, 4, 413

P.3d 116, 117 (Wyo. 2018); *Brown v. State*, 2017 WY 45, ¶¶ 9, 12, 393 P.3d 1265, 1270, 1271 (Wyo. 2017); *Walters v. State*, 2008 WY 159, ¶¶ 21, 23, 197 P.3d 1273, 1279 (Wyo. 2008); *see also United States v. Bundy*, 392 F.3d 641, 648 (4th Cir. 2004) ("In short, there should be no trial after the specified issues are resolved by the court of appeals.").

[¶24]   Therefore, Mr. Barney's valid plea could in no way rest on the timeliness of his motion to suppress, because reversal on timeliness would not require dismissal of the charges or suppression of the evidence necessary for Mr. Barney's conviction.   The dispositive issue underlying Mr. Barney's valid conditional guilty plea involves the merits of his Fourth Amendment claim.

[¶25]   In other words, where, as here, the court denies a motion to suppress as untimely but nevertheless rules on the merits and then allows the defendant to enter a conditional guilty plea reserving the right to appeal the denial, the State cannot rely on the timeliness ruling as a basis to affirm because timeliness is not dispositive.   We therefore address the denial on the merits.

## II.      *The district court did not err in denying Mr. Barney's motion to suppress.*

[¶26]   The constitutionality of a seizure is a question of law we review de novo.   *Elmore v. State*, 2021 WY 41, ¶ 8, 482 P.3d 358, 361 (Wyo. 2021) (citation omitted).   And we may affirm on any basis found in the record.   *See, e.g.*, *Wallace v. State*, 2009 WY 152, ¶ 11, 221 P.3d 967, 969 (Wyo. 2009).   On our de novo review of this record, we affirm because the evidence supporting Mr. Barney's charges is admissible under the attenuation doctrine.

[¶27]   The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures[.]"   U.S. Const. amend. IV.   "The exclusionary rule was adopted to effectuate [] Fourth Amendment right[s][.]"   *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974); *see also Utah v. Strieff*, 579 U.S. 232, 237, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016) (explaining that the exclusionary rule is "the principal judicial remedy to deter Fourth Amendment violations" (citation omitted)). Under the exclusionary rule, evidence obtained in violation of an individual's Fourth Amendment rights cannot be used against them in a criminal proceeding.   *See, e.g.*, *Calandra*, 414 U.S. at 347, 94 S.Ct. at 619 (citations omitted); *see Strieff*, 579 U.S. at 237, 136 S.Ct. at 2061; *Hall v. State*, 2007 WY 138, ¶ 7, 166 P.3d 875, 877 (Wyo. 2007).   The rule applies to the "primary evidence obtained as a direct result of an illegal search or seizure[.]"   *Strieff*, 579 U.S. at 237, 136 S.Ct. at 2061 (citation omitted).   It also applies to any later discovered evidence that derives from the illegal search or seizure and is thus "fruit of the poisonous tree."   *Id.* (citation omitted).

[¶28]   The attenuation doctrine is an exception to the exclusionary rule.   *Id.*, 579 U.S. at 238, 136 S.Ct. at 2061.   Under the attenuation doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been

5

interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" *Id.* (citation omitted).

[¶29] We consider three factors in determining whether the attenuation doctrine applies. *Id.*, 579 U.S. at 239, 136 S.Ct. at 2061–62 (citing *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). The first factor examines "the 'temporal proximity' between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional [conduct]." *Id.*, 579 U.S. at 239, 136 S.Ct. at 2062 (citation omitted). The second factor "consider[s] 'the presence of intervening circumstances.'" *Id.* (citation omitted). The third factor "examine[s] 'the purpose and flagrancy of the official misconduct.'" *Id.* (citation omitted).

[¶30] As applied here, the first factor favors suppression because a "substantial time" did not elapse between the alleged unlawful police conduct and when the evidence supporting Mr. Barney's charges was obtained. *See id.*, 579 U.S. at 239, 136 S.Ct. at 2062. Sergeant Bush initiated the traffic stop around 4:36 p.m. The challenged police conduct occurred within the first 20 minutes of the stop. Mr. Barney refused to exit his car for the next 30 minutes. Though it does not contain a video of the high speed chase, the record as a whole strongly suggests the entire incident, from start (traffic stop) to finish (marijuana discovery), lasted no more than a couple hours. Consequently, substantial time did not pass between the alleged unlawful conduct and when the evidence supporting the charges was obtained. *See id.*, 579 U.S. at 239–40, 136 S.Ct. at 2062 (noting a lapse of less than two hours supported suppression in *Brown*).

[¶31] The second factor, on the other hand, strongly favors attenuation. When Mr. Barney voluntarily fled, his conduct reflected new, distinct crimes, including aggravated assault and battery, interference with a peace officer, aggravated fleeing or attempting to elude, and reckless endangering, and seriously endangered public safety. He placed Deputy Skeens and Officer Tomford in danger, as both had to move out of the way of his car when he fled. Finally, during the high speed chase, he placed officers and the public at risk, driving in the dark with no headlights, driving over 100 miles per hour on the interstate, forcing other vehicles off the interstate, and running several stop signs after leaving the interstate.

[¶32] These intervening circumstances support attenuation. *See United States v. Gallinger*, 227 F. Supp. 3d 1163, 1172–73 (D. Idaho 2017) ("Where Courts have found attenuation in a defendant's flight, it has been premised on a determination that the flight was a truly independent and voluntary act by the defendant; constituted a new, distinct crime; or posed a serious risk to public safety." (collecting cases)); *United States v. Montez-Sanchez*, 535 F. App'x 440, 441–42, 443 (5th Cir. 2013) (applying the attenuation doctrine where defendants fled in a vehicle and, in doing so, almost ran down two officers, violated traffic laws, and put officers and the public in danger); *United States v. Allen*, 619 F.3d

6

518, 521, 526 (6th Cir. 2010) (declining to suppress evidence where defendant "attempt[ed] to escape from the police by leading the officers on a high-speed chase," which "constituted a new, distinct crime"); *United States v. Sheppard*, 901 F.2d 1230, 1235–36 (5th Cir. 1990) (collecting cases about flight in support of its conclusion that "Sheppard's illegal flight [in a vehicle] . . . constituted criminal activity and functioned to break any nexus between the challenged [conduct] and the evidence seized following the apprehension"); *see also* 6 Wayne R. LaFave, *Search and Seizure* § 11.4(j) (6th ed.), Westlaw (database updated Dec. 2021) (discussing cases where a person commits a criminal offense in response to an illegal arrest or search).

[¶33]   The third factor also favors attenuation. "The exclusionary rule exists to deter police misconduct." *Strieff*, 579 U.S. at 241, 136 S.Ct. at 2063 (citation omitted). "The third factor of the attenuation doctrine reflects that rationale by favoring exclusion only when the police misconduct is most in need of deterrence—that is, when it is purposeful or flagrant." *Id.*

[¶34]   Courts often evaluate the third factor by simply assuming, without deciding, that the alleged Fourth Amendment violations occurred. *See id.*, 579 U.S. at 239, 136 S.Ct. at 2062. We provide a more exacting analysis here, first considering which Fourth Amendment issues Mr. Barney preserved on appeal, next evaluating the likelihood any constitutional violations occurred, and finally, determining whether, even if any constitutional violations occurred, Sergeant Bush's conduct was purposeful or flagrant.

[¶35] One of Mr. Barney's primary contentions on appeal is that Sergeant Bush unconstitutionally prolonged the traffic stop by asking Deputy Skeens, who did not have a computer, to check his driver's license and whether he had a valid rental agreement. Mr. Barney may not raise this issue for the first time on appeal. Not only did the district court not address the issue, but the record is undeveloped for our review. *Cf. Mahaffy v. State*, 2021 WY 63, ¶¶ 12, 14, 486 P.3d 170, 173–74 (Wyo. 2020), *cert. denied*, 142 S.Ct. 485, 211 L.Ed.2d 294 (2021); *Brown v. State*, 2019 WY 42, ¶ 17, 439 P.3d 726, 731–32 (Wyo. 2019). Mr. Barney assumes an officer with a computer could more quickly verify a driver's license and conduct a rental car agreement check than a dispatcher could perform the same task, but the record contains no such evidence. We therefore exclude this alleged misconduct from our analysis.

[¶36]   Next, Mr. Barney argues Sergeant Bush expanded the scope and duration of the stop by asking him questions about drugs and conducting a dog sniff. Mr. Barney may raise this issue on appeal but its constitutional support is weak, as his continued detention following the traffic stop to verify his authority to operate the rental vehicle appears constitutional under the circumstances. *See Hembree v. State*, 2006 WY 127, ¶ 14, 143 P.3d 905, 909 (Wyo. 2006). Sergeant Bush detained him "only for a period of time sufficiently necessary to issue the traffic citation[] and to complete his investigation into [Mr. Barney's] authority to possess and operate the rental car." *See id.* The questioning

7

and the dog sniff both occurred before Ms. Pruet confirmed Mr. Barney had a valid rental car agreement approximately 51 minutes into the stop. *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S.Ct. 781, 788, 172 L.Ed.2d 694 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." (citing *Muehler v. Mena*, 544 U.S. 93, 100–01, 125 S.Ct. 1465, 1471, 161 L.Ed.2d 299 (2005))); *Mahaffy*, ¶ 20, 486 P.3d at 175–76 (distinguishing *Arizona* and *Mena* on grounds that the inquiries did prolong the stop); *Pryce v. State*, 2020 WY 151, ¶ 36, 477 P.3d 90, 99 (Wyo. 2020) (noting neither probable cause nor reasonable suspicion is required for a dog sniff so long as it can be accomplished within the time of the original detention).

[¶37] Finally, Mr. Barney asserts Sergeant Bush prolonged the stop by not looking at his Enterprise emails or taking him up on his offer to call Enterprise. Mr. Barney may raise these issues on appeal, but they, too, lack support. As to the emails, the district court found Mr. Barney never located his rental agreement. This factual finding is not clearly erroneous. *See Elmore*, ¶ 8, 482 P.3d at 361 (noting that in reviewing denial of a motion to suppress, we adopt the district court's factual findings unless they are clearly erroneous). Mr. Barney's statements to Sergeant Bush about his emails were equivocal, justifying Sergeant Bush's decision to verify the rental with Enterprise. As to the phone call, Mr. Barney cites no authority that officers must use the offered services of stopped drivers to locate rental agreements. Nor does he explain how a call from him would have made the verification faster than Ms. Pruet's call.

[¶38] However, even if the Fourth Amendment issues Mr. Barney preserved on appeal amounted to constitutional violations, there is little to suggest Sergeant Bush's conduct was purposeful or flagrant. "[P]urposeful and flagrant misconduct is generally found where: (1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed 'in the hope that something might turn up.'" *United States v. Fox*, 600 F.3d 1253, 1261 (10th Cir. 2010) (citation and internal quotations omitted)); *see also Strieff*, 579 U.S. at 233, 136 S.Ct. at 2058. That Sergeant Bush may have violated Mr. Barney's Fourth Amendment rights does not satisfy the standard. *See Strieff*, 579 U.S. at 242–43, 136 S.Ct. at 2064. Sergeant Bush's questioning was not purposeful or flagrant under the circumstances of this traffic stop.

[¶39] We therefore conclude Mr. Barney's flight and the circumstances surrounding his flight broke the causal connection between the alleged unlawful police conduct and the evidence supporting his charges. The evidence is therefore admissible and we affirm the district court's order denying his motion to suppress.