# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 83

APRIL TERM, A.D. 2022

June 28, 2022

THOW C. GUANDONG,

**Appellant**
**(Defendant),**

v.

S-21-0246

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Albany County*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Appellant:*
Linda E. Devine, Laramie, Wyoming.

*Representing Appellee:*
Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; David E. Singleton, Faculty Director, Prosecution Assistance Program; Morgan I. Cloud, Student Director, Prosecution Assistance Program. Argument by Ms. Cloud.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1]     Thow Guandong entered a conditional guilty plea to felony possession of marijuana. He reserved his right to appeal the district court's denial of his motion to suppress. On appeal Mr. Guandong challenges the constitutionality of his initial traffic stop under the Fourth Amendment to the United States Constitution. We affirm.

## *ISSUE*

[¶2]     Was Mr. Guandong's initial traffic stop constitutional under the Fourth Amendment to the United States Constitution?

## *FACTS*

[¶3]     On February 29, 2020, Deputy Derek Morrel of the Sweetwater County Sheriff's Office instructed law enforcement officers along the I-80 corridor to "be on the lookout" for a white Toyota Corolla. Trooper Aaron Kirlin, a dog handler for the Wyoming Highway Patrol, contacted Deputy Morrel and learned the following.

[¶4]     Earlier that day, Deputy Morrel noticed a Nissan Altima rental car with California plates traveling in tandem with a white Toyota Corolla. He believed the cars were traveling together because they were going approximately the same speed, made lane changes at the same time, and remained in close proximity to each other.

[¶5]     Deputy Morrel stopped the Nissan Altima.[1] There were two adults in the car. Both were from Lincoln, Nebraska. The driver—Tesloach Yiel—had a pending drug case in Rock Springs, Wyoming. On inquiring about their travel plans, Mr. Yiel said they were traveling from Utah, had not been anywhere else, and had the Altima the whole time. But a "license plate read" showed the Altima had been in or near Sacramento, California the day before.

[¶6]     While speaking with Mr. Yiel, Deputy Morrel noticed a strong odor of marijuana coming from the vehicle, so he searched it but did not find any controlled substances. He did, however, find a spare tire for a 2003 Toyota in the trunk. Deputy Morrel ran the license plate on the Toyota Corolla. It was registered in Lincoln, Nebraska. Based on the circumstances, Deputy Morrel believed the two cars were traveling together and that the Altima was a "decoy vehicle" and the Corolla was a "load vehicle."

[¶7]     Trooper Kirlin was familiar with drug traffickers' practice of using a "load vehicle" and "decoy vehicle" to transport drugs. The decoy vehicle is intended to attract law enforcement's attention so the load vehicle, which contains drugs, will not be stopped.

---

[1] The record does not reveal why Deputy Morrel stopped the Altima.

1

Trooper Kirlin had participated in four or five seizures involving this strategy during his 11-year law enforcement career.

[¶8]    After speaking with Deputy Morrel, Trooper Kirlin contacted Trooper Mark Russel about Mr. Yiel's pending drug case and learned that, in April 2019, Trooper Russel conducted a traffic stop involving Mr. Yiel that resulted in the seizure of approximately 20 pounds of marijuana.  He also learned that Mr. Yiel was a suspected gang member.  Furthermore, Trooper Kirlin obtained the Toyota Corolla's registration information from Deputy Morrel and thus knew it was registered in Lincoln, Nebraska and that the registered owner, Mr. Guandong, had firearms violations in Nebraska.[2]

[¶9]    Later that day, Trooper Kirlin observed the Corolla traveling 59 miles per hour in a 75 mile per hour zone on I-80 in Albany County.  He noticed one person in the car—a male driver.  He also noticed several air fresheners and an identification badge hanging from the rearview mirror.

[¶10]  Trooper Kirlin decided to conduct a traffic stop for two reasons.  First, he believed the driver was transporting controlled substances based on the information he learned earlier that day.  Second, he believed the items hanging from the rearview mirror might obstruct the driver's vision.

[¶11]  On stopping the Corolla, Trooper Kirlin informed the driver, Mr. Guandong, that he stopped him because the items hanging from his rearview mirror could impede his vision.  Trooper Kirlin further informed Mr. Guandong that he intended to write him a warning and asked for his driver's license, registration, and proof of insurance.  Trooper Kirlin then asked Trooper Susan Berkeyheiser, who was already on scene, to write the warning.

[¶12]  While Trooper Berkeyheiser wrote Mr. Guandong a warning, Trooper Kirlin walked his drug dog around the car and it alerted to the odor of a controlled substance.  On searching the car, officers found approximately 47 pounds of marijuana and marijuana products in the trunk.  They also noticed the spare tire was missing.

[¶13]  Mr. Guandong was arrested and charged with three felonies: conspiracy to deliver marijuana, possession of marijuana, and possession of marijuana with intent to deliver.  After pleading not guilty to the charges, he moved to suppress the marijuana, arguing the initial traffic stop violated his rights under the Fourth Amendment to the United States Constitution.  More specifically, he contended the initial stop could not be justified based on the items hanging from his rearview mirror because those items did not materially

---

[2] The record is not clear whether Trooper Kirlin learned this information directly from Deputy Morrel or through his own investigation after receiving the registration information from the deputy.

obstruct his view. *See* Wyo. Stat. Ann. § 31-5-955(a) (LexisNexis 2021).[3] The State responded that Trooper Kirlin had reasonable suspicion to stop Mr. Guandong for both drug trafficking and for violating § 31-5-955(a).

[¶14] The court held a suppression hearing where Mr. Guandong confirmed that he only challenged the initial traffic stop; he did not challenge the stop's duration or the drug dog's certification. Trooper Kirlin then testified to the facts set forth above and the court admitted a copy of his dash camera video.

[¶15] The court denied Mr. Guandong's motion to suppress, concluding "the initial traffic stop was justified at its inception *as a drug trafficking investigation*, although not as an obstructed windshield traffic violation." After the court denied his motion, Mr. Guandong reached a plea agreement with the State and entered a conditional guilty plea to felony possession of marijuana. He reserved the right to appeal the denial of his suppression motion. The court accepted his plea and sentenced him to prison for three to five years, suspended in favor of unsupervised probation for two years. This timely appeal followed.

### *STANDARD OF REVIEW*

[¶16] In reviewing the district court's denial of Mr. Guandong's motion to suppress, we adopt the district court's factual findings because he does not challenge them as clearly erroneous. *See Elmore v. State*, 2021 WY 41, ¶ 8, 482 P.3d 358, 361 (Wyo. 2021) (citing *Pryce v. State*, 2020 WY 151, ¶ 16, 477 P.3d 90, 94 (Wyo. 2020)). We review de novo whether the initial stop was legally justified. *Id.* (citing *Pryce*, ¶ 16, 477 P.3d at 95).

### *DISCUSSION*

[¶17] The Fourth Amendment to the United States Constitution prohibits unreasonable seizures. U.S. Const. amend. IV. Because a traffic stop is a seizure of the vehicle's occupants, it must be conducted in accordance with the Fourth Amendment. *Mahaffy v. State*, 2021 WY 63, ¶ 17, 486 P.3d 170, 175 (Wyo. 2021), *cert. denied*, 142 S.Ct. 485, 211 L.Ed.2d 294 (2021) (citing *Pier v. State*, 2019 WY 3, ¶ 16, 432 P.3d 890, 896 (Wyo. 2019)).

[¶18] As explained in *Pier*, "[a] traffic stop is analogous to an investigative detention and is justified if the officer has reasonable suspicion a crime has been or is being committed." *Pier*, ¶ 16, 432 P.3d at 896 (citing *Venegas v. State*, 2012 WY 136, ¶¶ 8–9, 287 P.3d 746, 748–49 (Wyo. 2012)). "Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and

---

[3] Wyo. Stat. Ann. § 31-5-955(a) provides: "No person shall drive any motor vehicle with any sign, poster or other material or substance upon or crack within the front windshield, side or rear windows of the vehicle which materially obstructs, obscures or impairs the driver's clear view of the highway or any intersecting highway."

unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." *Id.* (quoting *Jennings v. State*, 2016 WY 69, ¶ 9, 375 P.3d 788, 791 (Wyo. 2016)). "Reasonable suspicion requires a fact-centered inquiry based upon the totality of the circumstances." *Id.* (internal quotations omitted) (quoting *Venegas*, ¶ 9, 287 P.3d at 749).

[¶19]  The district court concluded Trooper Kirlin had reasonable suspicion to stop Mr. Guandong for drug trafficking based on the collective knowledge doctrine, which allows an officer to rely on information gathered by other officers. *Pier*, ¶ 21, 432 P.3d at 897. "There are two types of collective knowledge—horizontal and vertical." *United States v. Latorre*, 893 F.3d 744, 753 (10th Cir. 2018). Under the vertical collective knowledge doctrine, an officer with reasonable suspicion may direct another officer to stop a suspect, even without communicating the information justifying the stop. *Pier*, ¶ 21, 432 P.3d at 897 (citing *United States v. Whitley*, 680 F.3d 1227, 1234 (10th Cir. 2012)). Under the horizontal collective knowledge doctrine, officers may pool their collective knowledge where no single officer has sufficient information to justify the stop, provided they have communicated the information they know to each other.[4] *See Latorre*, 893 F.3d at 753 (citing *Whitley*, 680 F.3d at 1234 n.3); *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008). It is unclear whether Deputy Morrel's instruction to "be on the lookout" for a white Toyota Corolla included an instruction to stop the car for drug trafficking if it was located. For that reason, and because Trooper Kirlin collected information from Deputy Morrel and Trooper Russell in support of the stop, this case is more aptly characterized as a horizontal collective knowledge case.

[¶20] Mr. Guandong's primary contention on appeal is that his case is factually distinguishable from two cases the district court cited in support of its conclusion that the collective knowledge doctrine applied: *Pier v. State*, 2019 WY 3, 432 P.3d 890 (Wyo. 2019) and *State v. Holdorf*, 355 Or. 812, 333 P.3d 982 (2014). Both involved officers sharing information with each other and an initial traffic stop for a routine traffic violation, followed by an eventual arrest for a drug crime. *Pier*, ¶¶ 3–12, 432 P.3d at 894–95; *Holdorf*, 355 Or. at 815–16, 333 P.3d at 984–85. However, the relevant question on appeal is not whether this case is factually similar to *Pier* or *Holdorf*.[5] It is whether Trooper Kirlin had reasonable suspicion to stop the driver of the Corolla for drug trafficking based on the

---

[4] The two types of collective knowledge are not mutually exclusive. *Latorre*, 893 F.3d at 753; *Chavez*, 534 F.3d at 1345 n.12.

[5] The factual distinctions Mr. Guandong identifies are not meaningful. Contrary to Mr. Guandong's suggestion, neither case stands for the proposition that the officer who initiated the traffic stop must have "had direct knowledge of the defendant through prior interactions" or made personal observations about the defendant for the collective knowledge doctrine to apply or for an officer to develop reasonable suspicion of criminal activity. *See Pier*, 2019 WY 3, 432 P.3d 890; *Holdorf*, 355 Or. 812, 333 P.3d 982. And, though the officers in both of those cases initiated the underlying traffic stop for a routine traffic violation, *Pier*, ¶¶ 7, 18, 432 P.3d at 894, 896–97; *Holdorf*, 355 Or. at 984, 333 P.3d at 815, a routine traffic violation is not the only reason an officer may initiate a traffic stop. As noted above, an officer may stop a vehicle if the officer has reasonable suspicion of any criminal activity. *Pier*, ¶ 16, 432 P.3d at 896.

information he knew from various sources prior to the traffic stop. In answering that question, we defer to the following findings of fact by the district court:

> At the time Trooper Kirlin initiated the traffic stop, he had knowledge via the collective knowledge doctrine to justify the initial stop, including: (a) Deputy Morrel's observation of Mr. Guandong's and Mr. Yiel's cars travelling together at similar speed, and changing lanes at the same time; (b) identifying Mr. Guandong's vehicle by its license plate number; (c) the spare tire and contents of another vehicle's trunk found within Mr. Yiel's car, which matched a 2003 Toyota Corolla; (d) the odor of marijuana in Mr. Yiel's vehicle and the absence of actual marijuana; (e) the links between Mr. Yiel and organized crime and drug trafficking activities, including Mr. Yiel's criminal history; (f) Mr. Guandong's criminal history; (g) the inaccurate accounts of where Mr. Yiel's car had been travelling the previous day; and (h) Trooper Kirlin's and Deputy Morrel's training and experience regarding the use of decoy and load cars in narcotics trafficking.

[¶21]   Some facts Trooper Kirlin considered in support of his conclusion that the Altima and Corolla were engaged in a decoy vehicle/load vehicle strategy could be innocent when considered in isolation: the two cars appeared to be traveling together, the Altima contained a spare tire matching a 2003 Toyota, and both the occupants of the Altima and the registered owner of the Corolla were from Lincoln, Nebraska. But we do not consider the facts in isolation—we must consider the totality of the circumstances. *See, e.g.*, *Feeney v. State*, 2009 WY 67, ¶ 22, 208 P.3d 50, 57 (Wyo. 2009); *Frazier v. State*, 2010 WY 107, ¶ 22, 236 P.3d 295, 302 (Wyo. 2010).   Importantly, Trooper Kirlin also knew the information Mr. Yiel provided Deputy Morrel about his travel itinerary conflicted with information the deputy obtained about where the Altima had recently been spotted. *See Pier*, ¶ 28, 432 P.3d at 898–99 ("We have also recognized that inconsistencies in a traveler's itinerary are properly considered in the reasonable suspicion analysis.").   The Altima smelled strongly of marijuana but contained none.   And Mr. Yiel had a pending criminal case involving transportation of 20 pounds of marijuana and Mr. Guandong had a criminal history involving firearms.[6] *See Brown v. State*, 2019 WY 42, ¶ 33, 439 P.3d 726,

---

[6] Mr. Guandong asserts that "it is difficult to imagine that reasonable suspicion to initiate a stop should be based upon imputing one driver's known criminal activity to another"; but Trooper Kirlin did not stop Mr. Guandong based solely on Mr. Yiel's pending drug case.  He permissibly considered Mr. Yiel's pending case as one piece in the reasonable suspicion puzzle. *See, e.g.*, *Pier*, ¶¶ 3–4, 22–26, 432 P.3d at 894, 898 (officers developed reasonable suspicion based, in part, on what they knew about Mr. Pier's association with Mr. Kelly, who was under investigation for drug trafficking, and Ms. Atkinson, who was a drug user); *Holdorf*, 355 Or. at 824, 333 P.3d at 989 (explaining that the court of appeals incorrectly "reject[ed] any information pointing to criminal activity that did not 'relate[ ] to defendant himself'").

735 (Wyo. 2019) ("Although a person with a criminal record could not be pulled over or detained based on the record itself, such a record is one factor that may justify further detention and that may cast a suspicious light on other seemingly innocent behavior." (citation omitted)). On considering these facts in light of his training and experience, Trooper Kirlin concluded that the driver of the Corolla was transporting drugs and, based on the totality of the circumstances, we will defer to his "ability to distinguish between innocent and suspicious actions." *See Feeney*, ¶ 13, 208 P.3d at 54; *see also Elmore*, ¶ 10, 482 P.3d at 361; *United States v. Delgado*, 99 F. App'x 493, 495 (5th Cir. 2004) ("A belief that two vehicles are traveling in tandem in a lead car and load car arrangement may also contribute to a finding of reasonable suspicion." (citing *United States v. Inocencio*, 40 F.3d 716, 720, 723 (5th Cir. 1994))).

[¶22]  Trooper Kirlin had reasonable suspicion to stop the driver of the Corolla for drug trafficking. The initial stop was therefore legally justified under the Fourth Amendment to the United States Constitution, and the district court did not err in denying Mr. Guandong's motion to suppress.

[¶23]  Affirmed.