KAUTZ, Justice.
[¶1] A jury convicted Christopher Michael Requejo of two counts of aggravated assault and battery with a deadly weapon. Four and one-half months before his trial, Mr. Requejo demanded disclosure by the State of any recorded statements he or any witnesses had made. Although the State had access to such statements before Mr. Requejo's demand, it did not disclose them until three working days prior to trial. Mr. Requejo moved for dismissal of the charges as a sanction for the late discovery and now appeals the district court's denial of that motion. We find that the district court properly exercised its discretion by imposing other sanctions against the State and affirm the court's order denying Mr. Requejo's motion to dismiss.
ISSUE
[¶2] Mr. Requejo presents the following issue on appeal:
Whether the district court abused its discretion in not dismissing with prejudice the charges against Mr. Requejo as a sanction for the State's violation of Wyoming Rule of Criminal Procedure 16.
*749 FACTS
[¶3] On July 20, 2017, the State charged Mr. Requejo with two counts of aggravated assault and battery with a deadly weapon in violation of Wyo. Stat. Ann. § 6-2-502(a)(ii) and (b) (Lexis Nexis 2017). The charges stemmed from an incident where he attempted to forcibly enter the residence of his girlfriend's sister while swinging a machete at a window and yelling threats at the two occupants inside. Mr. Requejo pleaded not guilty at his arraignment on August 10, 2017, and the case was set for trial. On September 11, 2017, he served discovery demands on the State. Under W.R.Cr.P. 16, he demanded, among other discovery, any recorded statements he had made. Under W.R.Cr.P. 26.2 he requested "any and all statements which Rule 26.2 required be turned over." The district court did not enter an order requiring any discovery.
[¶4] While the State timely responded to most of Mr. Requejo's discovery requests, it failed to produce two items until January 24, 2018-three working days, or five days total before trial. These items were a recording of a 911 call made by the victim on the night of the incident and a statement made by Mr. Requejo to the police on the night of his arrest. Based on the late disclosure, Mr. Requejo filed a Motion to Dismiss Case with Prejudice on January 25, 2018.
[¶5] The district court held a hearing on the motion on January 29, 2018. The State denied any bad faith and asserted a lack of diligence and a glitch in their records acquisition process as the reason for the late disclosure. This glitch kept the State from discovering the records until several days before trial, after which they promptly disclosed them to Mr. Requejo. Acknowledging their violation of discovery rules, the State voluntarily stipulated to suppression of the late disclosed evidence and listed several remedial mechanisms it had implemented to avoid any future mistakes. It argued this stipulation materially weakened its case since the evidence in question was only inculpatory and thus damaging to Mr. Requejo's case, not helpful. Mr. Requejo agreed the State probably did not act in bad faith but stated that the late disclosure should not have occurred in any event. In addition, he argued that the late disclosure caused him to suffer prejudice due to its effect on plea negotiations and his inability to pursue a voluntary intoxication defense. The court offered Mr. Requejo a one-week continuance to consider a voluntary intoxication defense based on the late discovery materials, but he declined this offer. He declined two further offers of continuances made by the judge later in the proceedings, as well. The court issued its Order Denying Defendant's Motion to Dismiss on February 2, 2018, finding that Mr. Requejo agreed the State did not act in bad faith when it violated the discovery rules, that Mr. Requejo was not prejudiced by the error, that he declined the offer of a continuance for trial preparation, and that he requested the trial proceed as scheduled.
[¶6] On January 30, 2018, a jury convicted Mr. Requejo of both counts. The court sentenced him to concurrent six to ten-year periods of incarceration in a Wyoming State Penal Institution, with credit for 287 days of presentence confinement. Mr. Requejo subsequently filed a timely notice of appeal.
STANDARD OF REVIEW
[¶7] "A trial court has discretion in determining the proper sanction for a party's violation of its discovery responsibilities." Lawson v. State, 994 P.2d 943, 946 (Wyo. 2000) ; Lindsey v. State, 725 P.2d 649, 655 (Wyo.1986). State v. Naple , 2006 WY 125, ¶ 8, 143 P.3d 358, 360-61 (Wyo. 2006). The decision of a trial court in addressing a violation of required discovery will be set aside only for an abuse of discretion. Naple, ¶ 8, 143 P.3d at 361. We will find an abuse of discretion only if the trial court could not reasonably conclude as it did, and we will not reverse its decision if there is a legitimate basis for its ruling. Lawson , 994 P.2d at 947. The party challenging the trial court's decision has the burden of showing an abuse of discretion. Anderson v. State , 2014 WY 13, ¶ 11, 317 P.3d 1108, 1113 (Wyo. 2014).
DISCUSSION
[¶8] Our analysis begins with the Wyoming Rules of Criminal Procedure. Mr. Requejo *750 served the State with a written demand for discovery materials on September 11, 2017. Wyoming Rule of Criminal Procedure 16(a)(1)(A)(i)(1) mandates the production of any "relevant written or recorded statements made by the defendant" that the State controls or should know about after acting in due diligence, upon request by the defendant. In addition, W.R.Cr.P. 26.2(a) mandates, upon order by the court, the production of any written or recorded witness statements relating to that witness's past or future testimony that the State possesses or can reasonably obtain. This may include the late-disclosed 911 recording made by the victim to police the night Mr. Requejo attacked her at her house.
[¶9] Neither Rule 16 nor Rule 26.2 indicates a specific time frame for disclosure of demanded discovery materials. The advisory committee notes to F.R.Cr.P. 16, from which our rule is derived, state that "although no specific timing requirements are included, it is expected that the parties will make their requests and disclosures in a timely fashion." The purpose of the discovery rules "logically means that such disclosures must occur prior to the start of trial, if not earlier." United States v. Slough, 61 F.Supp.3d 103, 108 (D.D.C. 2014). Rule 26.2 only requires production of statements of witnesses "upon order of the court." Here, Mr. Requejo did not file any motions requesting the district court order the State to disclose any discovery materials, and the court did not issue a discovery order.
[¶10] The State did not argue that the timing of its disclosure of the recorded items complied with Rule 16. Although the district court did not enter an order for discovery, the State did not argue that disclosure of witness statements was not required under Rule 26.2. The State also did not contend that the 911 recording was not a witness "statement" under Rule 26.2. See Jones v. State, 568 P.2d 837 (Wyo. 1977). Consequently, for purposes of this opinion, we will assume that the timing of the State's disclosure of both recordings three working days before trial constituted a failure to comply with its duty to disclose under Rules 16 and 26.2. Rule 16(d)(2) provides direction in the event the State fails to comply with mandated discovery under that rule:
If at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.
[¶11] The court may dismiss with prejudice if it finds the sanction to be just under the circumstances. Naple , ¶ 11, 143 P.3d at 361. When evaluating whether a sanction is just under the circumstances, courts consider the following three factors:
(1) the reasons the State delayed producing the requested materials, including whether or not the prosecutor acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the delay; and (3) the feasibility of curing the prejudice with a continuance.
Id. , ¶ 24, 143 P.3d at 365. Additionally, the court must impose the least severe sanction that will effectively ensure the State's future compliance with discovery responsibilities. Id . In Naple , the Court approved of a quote from 21 Am.Jur.2d. Criminal Law § 784 (2006) detailing the "exceptional circumstances" when dismissal is an appropriate remedy for a discovery violation.
A court's dismissal of a criminal case is a remedy of last resort, and a trial judge abuses his or her discretion by ignoring intermediate remedial steps. Such dismissal is reserved for severe situations because dismissal of a charging instrument frustrates the public interest in the prosecution of crimes.
Id. , ¶ 13, 143 P.3d at 362-63.
[¶12] Further elaborating on this principle, the Court in Naple quoted the Tenth Circuit, which stated that, "instances where an appellate court has upheld a district court's dismissal of an indictment because of alleged prosecutorial misconduct are 'few and far between.' " Id., ¶ 12, 143 P.3d at 362, citing *751 United States v. Anderson, 778 F.2d 602, 606 (10th Cir. 1985). In short, while dismissal with prejudice can be "just under the circumstances" in addressing a violation of discovery rules, it is a remedy of last resort reserved for extreme cases. Analysis of the three Naple factors is required first, and dismissal should only be applied when no other sanction will incentivize compliance with discovery rules in the future.
Reasons for Delay
[¶13] Considering the first factor of the Naple test, the State asserts a glitch in its record acquisition process was the reason for its delay. Apparently, while the State had access to the Goshen County Sheriff's Office records, it did not have that same access to the Torrington Police Department's records due to an oversight. Upon discovering these recorded materials several months after being served with Mr. Requejo's discovery request, the State promptly delivered them to him. While this was an oversight, the record shows no evidence of bad faith on the part of the State. Bad faith is a notoriously nebulous concept, but there are several helpful definitions. According to Black's Law Dictionary 166 (10th ed. 2014), "bad faith" is described as "Dishonesty of belief or purpose." We used this definition in our own precedent when describing bad faith refusal to pay insurance claims, " 'Bad faith' by definition cannot be unintentional. 'Bad faith' is defined as 'Deceit; duplicity; insincerity.' " Hatch v. State Farm Fire and Cas. Co. , 842 P.2d 1089, 1092 (Wyo. 1992). Although Hatch deals with bad faith in a tort context, we find its definition of bad faith to be applicable here.
[¶14] The State did not disclose recordings of the victim's 911 call and Mr. Requejo's post arrest statement with the police until three days before trial. We find no evidence anywhere in the record indicating the State willfully withheld these recordings from Mr. Requejo. In fact, during the motion hearing, defense counsel stated, "as I said the last time we discussed this issue, I don't believe that the State acted in bad faith. I believe that there was perhaps some diligence that was not done, but I don't think it was not (sic) done in bad faith." The State, for its part, admitted it made a mistake and had no intention to willfully withhold the discovery information from Mr. Requejo. During the same motion hearing, the prosecutor said, "There is certainly an issue with the way that the State receives and handles information, but certainly nothing that approaches willful or intentional." The State also stipulated to suppression of the evidence and adopted several remedial mechanisms designed to prevent this from happening again in the future. The office now has access to the police department's records, it uses a pre-trial checklist to keep staff prepared, and it has implemented other internal review procedures to ensure there are "two eyeballs on everything." It is reasonable to conclude the late disclosure was nothing more than an inadvertent mistake and not willfully dishonest, a mistake which the State should diligently seek to avoid in the future.
Prejudice
[¶15] Looking at the second factor of the Naple test, the record does not demonstrate Mr. Requejo suffered any prejudice. He identified only two possible areas of prejudice at the motion hearing. First, he suggested that earlier disclosure of the evidence could have provided the basis for a voluntary intoxication defense, and second, he surmised that earlier disclosure could have "changed the landscape of plea negotiations." However, when offered a one-week continuance to prepare a voluntary intoxication defense, Mr. Requejo stated it was not necessary since he did not plan to pursue that defense. In fact, the district court offered him a continuance three separate times during the motion hearing, offers he expressly declined.
[¶16] Mr. Requejo's assertion that his plea negotiations may have proceeded differently is not a claim of prejudice. No evidence supports a claim of any lost opportunities or intentions to plead differently and obtain a more favorable result. In the present case, Mr. Requejo pleaded not guilty to aggravated assault, and there is no evidence he contemplated pleading otherwise. There also is no evidence the prosecution considered offering him a plea bargain, much less one more beneficial than his ultimate sentence. A decision to go to trial, as opposed to *752 pleading guilty, cannot be grounds for a claim of prejudice. Trial provides the possibility of a favorable verdict while a guilty plea does not, and speculative claims about plea negotiations will not change that.
[¶17] Both parties stipulated to suppression of the evidence at issue, a decision the State asserts "materially weakened" its case. According to the State, both the 911 recording and the post-arrest interview contained only inculpatory evidence against Mr. Requejo, evidence more beneficial to the prosecution's case than his. Mr. Requejo's counsel stated as much during the motion hearing:
Although it [the 911 recording] does contain some evidence that may be favorable to my client, on the whole neither of those [recordings] do I believe help our case and Mr. Requejo I believe agrees with me -- he's nodding his head in the affirmative -- and so we have decided not to use that evidence.
Even with the late disclosure, the suppression of the recordings only served to help Mr. Requejo's case by keeping inculpatory evidence out of the record. In any event, the jury never heard either of the recordings. We cannot conceive of any possibility where the lack of availability of this evidence had any effect on the jury verdict, much less a prejudicial one.
Continuance or Other Cures for Prejudice
[¶18] Finally, under the third factor we must consider the feasibility of curing the alleged prejudice with a continuance. First and foremost, there is no need to cure non-existent prejudice, and here there is none. As discussed above, Mr. Requejo suffered no prejudice from the State's late disclosure because the evidence was harmful to him, because the evidence was voluntarily suppressed, and because the trial court offered additional time to prepare his case. There is no doubt Mr. Requejo was prepared for trial, even with the last-minute development of the late-disclosed evidence. When asked at the motion hearing what other prejudice Mr. Requejo would suffer if the trial proceeded as planned the next day, his counsel stated, "There would be no prejudice, your honor. We are ready to go to trial." The cure for a violation of discovery rules must be in proportion to the prejudice, and where there is no prejudice, there is no need for a cure.
Least Severe Sanction
[¶19] As part of the three-factor Naple test, courts also must impose the least severe sanction necessary to ensure the State's future compliance with discovery responsibilities. Naple , ¶ 12, 143 P.3d at 362. The primary goals of this requirement are to remedy the issue at hand and avoid prejudice. Courts prefer to decide criminal matters on their substance as opposed to their form, and such is the case here. A continuance would have adequately addressed any possibility of prejudice in this case, but Mr. Requejo refused it as unnecessary. We find dismissal of this case was unnecessary as well.
[¶20] Mr. Requejo's argument draws significantly from Black v. State , 2017 WY 135, 405 P.3d 1045 (Wyo. 2017) and it is necessary to distinguish that case from our holding here. First and foremost, the facts of Black are substantially different from the facts in this case. Black dealt with the failure of the State to request electronic evidence from Facebook and Verizon after being ordered to do so by the district court. Id., ¶ 25, 405 P.3d at 1054. Both companies deleted the information before anyone could use it, so the court did not know if it was inculpatory or exculpatory. Id. , ¶ 28, 405 P.3d at 1055. In contrast, here the State did not disobey a discovery order. It did produce the evidence promptly upon discovery (though admittedly late). The trial court and the parties knew exactly what the late-disclosed evidence was, and it was not helpful to Mr. Requejo. Second, the Court in Black found the State acted in bad faith by disobeying the lower court's order to retrieve the information stating, "In this case, however, we find the court's decision was based on the unsupportable premise that the State acted in good faith when it failed to comply with the discovery order." Id. , ¶ 24, 405 P.3d at 1054. As analyzed above, no indication of bad faith exists in this case. The State voluntarily stipulated to suppression of the evidence, promptly disclosed the recordings, implemented several internal remedial *753 procedures, and remedied the defect in their discovery process. Defense counsel even admitted that the incident was probably due to a lack of diligence more than an act of bad faith. As such, we find the result in Black distinguishable from our holding here.
[¶21] We find that no abuse of discretion exists in the district court's decision to deny Mr. Requejo's motion to dismiss. There is ample evidence in the record supporting the district court's legal conclusions. The court's decision to offer a one-week continuance as a remedy for the violation of discovery rules under W.R.Cr.P. 16, along with the stipulated exclusion of evidence, was a just and appropriate remedy under the circumstances.
[¶22] We affirm.