# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 56

APRIL TERM, A.D. 2025

May 22, 2025

RICHARD CLARK HANSON,

Appellant
(Defendant),

v.                                                                              S-24-0195

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Lincoln County*
The Honorable Joseph B. Bluemel, Judge

*Representing Appellant:*
Brandon T. Booth, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Sean H. Barrett, Senior Assistant Appellate Counsel. Argument by Mr. Barrett.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**JAROSH, Justice.**

[¶1]    Richard Hanson was a passenger in a vehicle stopped for missing license plates. During a consent search of the vehicle, law enforcement discovered a firearm and drug paraphernalia with residue inside a backpack.  Mr. Hanson was charged with and convicted of being a felon knowingly in possession of a firearm and third offense possession of a controlled substance.   On appeal, Mr. Hanson asserts the search of the vehicle was unlawful, and the district court erred when it denied his motion to suppress the evidence collected from the backpack.  He also asserts the district court abused its discretion when it denied his motion to suppress evidence as a discovery sanction.  We affirm.

## ISSUES

[¶2]    Mr. Hanson raises two issues:

1.      Did the District Court err when it denied Mr. Hanson's motion to suppress evidence allegedly taken in violation of his constitutional rights to be free from unreasonable search and seizure?

2.      Did the district court abuse its discretion when it denied Mr. Hanson's motion to suppress evidence disclosed by the State after the discovery deadline?

## FACTS

[¶3]    On the morning of December 5, 2023, Sergeant Kyle Thomson with the Lincoln County Sheriff's Office received a report of a black Chevrolet car without a rear license plate.  Soon after, Sergeant Thomson spotted a vehicle matching that description in Thayne, Wyoming.  Sergeant Thomson then initiated a traffic stop for lack of valid registration.

*Traffic Stop and Consent Search*

[¶4]    Sergeant Thomson's body camera captured the traffic stop.  After approaching the vehicle, Sergeant Thomson said to the driver "when you went by me, I noticed you didn't have any license plates on."  The driver, Joshua Horsley, explained "just bought the car not too long ago, waiting for the title."  Mr. Horsley then directed Sergeant Thomson to the bill of sale in the back window.  When asked when the bill of sale was issued, Mr. Horsley said he wasn't sure but thought it was November 16 or 18.  Mr. Horsley then provided his driver's license and proof of insurance, and stated the car was purchased from Erin Corun. Sergeant Thomson then asked Mr. Horsley to remove the bill of sale from the back window. Once retrieved, Sergeant Thomson read from the bill of sale, "Chevy Impala sold to Rick Hanson on 12/4" and asked, "Who is Rick Hanson?"

1

[¶5]    The passenger in the front of the vehicle identified himself as Rick Hanson, pointed to Mr. Horsley and said "he bought it" before stopping abruptly.  After the pause, Mr. Hanson stated he was going to buy the vehicle but wanted to go for a ride to see if anything was wrong with it.  After confirming the date on the bill of sale was the day before, not the middle of November, Sergeant Thomson returned to his patrol vehicle and ran Mr. Horsley's and Mr. Hanson's names through dispatch.  When dispatch responded that the names came back without any notices, Sergeant Thomson asked dispatch to investigate whether either occupant was on probation.  He then returned to the vehicle to call in the VIN.

[¶6]    Mr. Horsley and Mr. Hanson were asked to step out of the vehicle and stand behind it with Sergeant Thomson's partner.  While waiting for a response on the VIN, dispatch confirmed it found Mr. Hanson's name on a recent probation list.

[¶7]    Sergeant Thomson interviewed the occupants separately.  Mr. Horsley stated the two men were in town to visit the post office and use the wi-fi in the parking lot of a local bar.  When asked who owned the car, Mr. Horsley said, "it would be [Hanson's] if he paid [Erin], but if he hasn't paid [Erin] I'm assuming it's still [Erin's].  I don't know."  Then, Mr. Horsley shared he was initially going to buy the car but didn't come up with the cash.  When asked about Ms. Corun, Mr. Horsley said she's from Idaho.  As Sergeant Thomson concluded his interview with Mr. Horsley, dispatch responded over the radio that the vehicle was "last registered to Erin Corun of Idaho Falls."

[¶8]    Next, Sergeant Thomson called over Mr. Hanson, who had been talking casually with Sergeant Thomson's partner about a member of Mr. Hanson's family.  When asked who owned the car, Mr. Hanson responded, "Erin Corun."  Sergeant Thomson then asked why Mr. Hanson's name appeared on the bill of sale.  Mr. Hanson said he was going to get some work done on the car, surmised Ms. Corun put the bill of sale in the window, and then denied buying the car.  When asked where Ms. Corun was, Mr. Hanson said she was at a friend's house in Grover, Wyoming.  Mr. Hanson offered to call Ms. Corun but then said his phone was out of minutes so he could not contact her without wi-fi.

[¶9]    Sergeant Thomson then stated, "your name is on that bill of sale, so as far as I am concerned, this is your car then."  Mr. Hanson responded that Ms. Corun wrote that bill of sale late the night before.  The following exchange then took place:

> Thomson:  Is it ok if I call you Rick?
> Hanson:  Yeah.
> Thomson:  Rick, anything in the car that shouldn't be in the car?
> Hanson:  Not that I'm aware of, no.
> Thomson:  Would it be ok if I looked in there?
> Hanson:  Um, yea.

2

Mr. Hanson returned to the rear of the vehicle and stood a short distance from Mr. Horsley and Seargent Thomson's partner. Sergeant Thomson then asked Mr. Horsley what items in the car belonged to him and reiterated that Mr. Hanson said it was okay to do a consent search of the car. Mr. Horsley responded his jacket was in the driver's seat.

[¶10] After he briefly searched the jacket and returned it to Mr. Horsley, Sergeant Thomson began searching near the middle console before moving on to a backpack that was behind the driver's seat. In the backpack, Sergeant Thomson discovered ammunition, a .40 caliber handgun, paperwork in manila envelopes, a digital scale, a pipe, and some jewelry.

[¶11] At that point, Sergeant Thomson called Mr. Hanson back to the car and asked about the items from the backpack. Mr. Hanson said the jewelry and paperwork were his and he used the scale to measure the gold jewelry. He denied owning the pipe, pistol, and ammunition. Specifically, Mr. Hanson denied owning the backpack and said he only put his things in the bag because he and the owner were going to go to Idaho Falls the night before. Mr. Hanson also confirmed he was on probation for drug possession and was a convicted felon.

[¶12] Several officers then joined in the search of the vehicle and found some cross top pills under a seat and an Idaho license plate in the backseat. An officer assisting with the search said he had learned Ms. Corun reported a stolen license plate and that was probably it. The body camera footage then ends.

[¶13] Sergeant Thomson transported Mr. Hanson to Afton to provide a urine sample because he was on probation for a controlled substance offense. That sample tested presumptively positive for methamphetamine, amphetamine, alcohol, and THC. Mr. Horsley was allowed to return the car to Grover.

[¶14] Mr. Hanson was subsequently cited for possession of a controlled substance and investigated for a probation violation and possession of a firearm by a convicted felon. The Lincoln County Sheriff's Department did not immediately send the seized drug paraphernalia or scale to the State Crime Lab for testing.

*Arrest and Pre-Trial Proceedings*

[¶15] Approximately a week after the traffic stop, Mr. Hanson was charged with Count I — use or possession of firearm by person convicted of a felony, and Count II — possession of a controlled substance, third or subsequent offense. He was arrested on December 20, 2023, upon execution of a warrant.

[¶16] Through counsel, Mr. Hanson filed a motion to suppress "any and all evidence obtained as a result of his seizure, prolonged detention, and search of the vehicle" on

3

February 28, 2024. Mr. Hanson argued Sergeant Thomson's questioning and search were not related to the offense of driving without a valid license plate and the search violated his constitutional rights. He also maintained that his consent to search the vehicle was not voluntary, in part because of the significant law enforcement presence during the traffic stop.

[¶17] The district court held a hearing on the motion on March 25, 2024. Sergeant Thomson testified as to why he initiated the traffic stop, his growing suspicion during his interviews about whether the car was properly registered, and his reason for asking to search the vehicle. After hearing additional argument from the parties, the district court denied the motion in an oral ruling.

[¶18] Up until that point, the Lincoln County Sherriff's Office still had not sent the drug paraphernalia to the State Crime Lab for testing because it was aware of Mr. Hanson's motion to suppress and reasoned that the outcome would dictate whether it was necessary to test the seized items for drug residue. However, after the district court denied Mr. Hanson's motion, it failed to send those items to the State Crime Lab.

[¶19] Two months after the district court denied Mr. Hanson's motion to suppress, the State's attorney discovered the drug paraphernalia still had not been sent to the State Crime Lab. The State notified the defense of the oversight on May 28, 2024, made immediate arrangements to have the items sent to the State Crime Lab, and notified the district court during a pre-trial conference the next day. Mr. Hanson received the State Crime Lab results confirming the residue was methamphetamine on May 31, 2024. The district court's discovery deadline passed several months prior, and Mr. Hanson's trial was scheduled for June 17, 2024.

[¶20] Mr. Hanson filed a second motion to suppress on June 10, 2024, arguing the State had committed a discovery violation that justified excluding the lab results at trial. He did not argue the State acted in bad faith. The State conceded it made the mistake, stated it brought the issue to Mr. Hanson's and the district court's attention as soon as the oversight was discovered, and argued Mr. Hanson was not prejudiced by the late disclosure because the residue had tested presumptively positive during a roadside test.

[¶21] The district court held a hearing on the second suppression motion on June 12, 2024. After considering the circumstances behind the late disclosure, the prejudice it caused, and Mr. Hanson's desire to move forward with trial, the district court found the untimely disclosure somewhat prejudiced Mr. Hanson but denied the motion.

***Trial and Sentence***

[¶22] Following a two-day trial, Mr. Hanson was found guilty on Count I – possession of a firearm by a person convicted of a violent felony, and guilty on Count II – third or

4

subsequent offense, possession of a controlled substance. He was subsequently sentenced to a period of not less than one year and no more than three years imprisonment on both counts, to be served concurrently with credit for time served while awaiting trial. This appeal followed.

## STANDARD OF REVIEW

[¶23] Mr. Hanson challenges the district court's denial of his first motion to suppress under the Wyoming Constitution and United States Constitution. Our standard of review governing the denial of a motion to suppress is as follows:

> We view "the evidence in the light most favorable to the district court's determination and defer [ ] to the district court's factual findings unless they are clearly erroneous." *Simmons v. State*, 2020 WY 132, ¶ 10, 473 P.3d 1259, 1261 (Wyo. 2020) (alteration in the original) (quoting *Robinson v. State*, 2019 WY 125, ¶ 20, 454 P.3d 149, 156 (Wyo. 2019)). "We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to 'assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions." *Dixon v. State*, 2019 WY 37, ¶ 17, 438 P.3d 216, 226 (Wyo. 2019) (quoting *Kunselman v. State*, 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (Wyo. 2008)). "On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence." *Elmore v. State*, 2021 WY 41, ¶ 8, 482 P.3d 358, 361 (Wyo. 2021) (quoting *Pryce v. State*, 2020 WY 151, ¶ 16, 477 P.3d 90, 94–95 (Wyo. 2020)). The ultimate question of whether the search or seizure violated a constitutional right is a question of law that we review de novo. *Elmore*, ¶ 8, 482 P.3d at 361; *Fertig v. State*, 2006 WY 148, ¶ 8, 146 P.3d at 495; *see also O'Boyle v. State*, 2005 WY 83, ¶ 22, 117 P.3d 401, 408 (Wyo. 2005) (reviewing de novo whether a traffic stop violated Article 1, § 4 of the Wyoming Constitution).

*Levenson v. State*, 2022 WY 51, ¶ 16, 508 P.3d 229, 235 (Wyo. 2022).

[¶24] Mr. Hanson also challenges the district court's denial of his second motion to suppress evidence, which sought sanctions for an alleged discovery violation. "A trial court has discretion in determining the proper sanction for a party's violation of its discovery responsibilities." *Requejo v. State*, 2019 WY 44, ¶ 7, 439 P.3d 747, 749 (Wyo. 2019) (citing

5

*State v. Naple*, 2006 WY 125, ¶ 8, 143 P.3d 358, 360-61 (Wyo. 2006)) (cleaned up). The decision of a trial court addressing a violation of required discovery will be set aside only for an abuse of discretion. *Requejo*, ¶ 7, 439 P.3d at 749 (citing *Naple*, ¶ 8, 143 P.3d at 361). An abuse of discretion occurs only if the trial court could not reasonably conclude as it did, and we will not reverse its decision if there is a legitimate basis for its ruling. *Id.* (citing *Lawson v. State*, 994 P.2d 943, 947 (Wyo. 2000)). The party challenging the trial court's decision has the burden of showing an abuse of discretion. *Id.* (citing *Anderson v. State*, 2014 WY 13, ¶ 11, 317 P.3d 1108, 1113 (Wyo. 2014)).

## DISCUSSION

### I.     The traffic stop and search were lawful.

[¶25]  Mr. Hanson argues the district court erred when it denied his motion to suppress the evidence law enforcement seized during the traffic stop. Before the district court, Mr. Hanson claimed Sergeant Thomson's questioning and request to search were not related to the purpose of the traffic stop.   On appeal, he argues the district court should have granted the motion because Sergeant Thomson's questioning was unreasonable in scope and the consent to search the vehicle was not voluntary.

[¶26]  A traffic stop is an investigatory detention and amounts to a seizure, which must be conducted in accordance with Article 1, § 4 of the Wyoming Constitution and the Fourth Amendment to the United States Constitution. *Levenson*, ¶ 18, 508 P.3d at 236, n.4 (citing *Elmore v. State*, 2021 WY 41, ¶¶ 9-10, 482 P.3d 358, 361 (Wyo. 2021)). Under the Wyoming Constitution, a traffic stop "must be reasonable under all the circumstances." *Id.,* ¶ 19, 508 P.3d at 235-36 (citing *Klomliam v. State*, 2014 WY 1, ¶ 17, 315 P.3d 665, 669 (Wyo. 2015)). Under the Fourth Amendment, an officer's conduct is "judged by an objective standard which takes into account the totality of the circumstances." *Id.,* ¶ 32, 508 P.3d at 240 (citing *Elmore*, ¶ 10, 482 P.3d at 361).

[¶27]  At oral argument, both parties agreed this Court can review the issues presented using a Wyoming constitutional analysis because the circumstances in this case do not present a distinction between state and federal law. *See also Klomliam*, ¶ 17, 315 P.3d at 669, n.1 (observing that when reviewing a traffic stop and detention the Court is "considering the reasonableness of the government intrusion in light of all the circumstances" under either analysis). Accordingly, we will proceed with our analysis under the Wyoming constitution.

### A.     Sergeant Thomson's questioning was reasonable.

[¶28]  Mr. Hanson does not contest the justification for initiating the traffic stop. His appeal centers on the circumstances surrounding the interaction, including the scope of the officer's questioning and the length of the interaction. Specifically, Mr. Hanson argues

Sergeant Thomson exhausted his investigation once he verified the vehicle was not reported stolen and it was registered to Ms. Corun.

[¶29]  We evaluate the reasonableness of a traffic stop under Article 1, § 4 using a two-prong test: "1) was the initial stop justified; and 2) were the officer's actions during the detention reasonably related in scope to the circumstances that justified the interference in the first instance." *Fertig v. State*, 2006 WY 148, ¶ 19, 146 P.3d 492, 498 (Wyo. 2006) (applying the test articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968), to evaluate the reasonableness of a traffic stop under the Wyoming Constitution).  Because Mr. Hanson concedes the initial stop was justified, we can proceed with reviewing the traffic stop under the second prong of our analysis.  With respect to the reasonableness of an officer's actions, this Court has stated:

> During a routine traffic stop, a law enforcement officer may request a driver's license, proof of insurance and vehicle registration, run a computer check, and issue a citation. Generally, the driver must be allowed to proceed on his way without further delay once the officer determines the driver has a valid driver's license and is entitled to operate the vehicle.  In the absence of consent, an officer may expand the investigative detention beyond the purpose of the initial stop only if there exists an "'objectively reasonable and articulable suspicion' that criminal activity has occurred or is occurring."

*Harris v. State*, 2018 WY 14, ¶ 17, 409 P.3d 1251, 1254 (Wyo. 2018) (citing *Garvin v. State*, 2007 WY 190, ¶ 14, 172 P.3d 725, 729 (Wyo. 2007)).  We have never imposed an arbitrary time limit when determining the permissible length of a traffic stop.  *Harris*, ¶ 17, 409 P.3d at 1254.  Instead, we examine whether law enforcement "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly and without undue delay in detaining a defendant." *Id.* (quoting *Lindsay v. State*, 2005 WY 34, ¶ 19, 108 P.3d 852, 857 (Wyo. 2005)).

[¶30]  Mr. Hanson contends Sergeant Thomson completed his investigation after verifying Mr. Horsley possessed a valid driver's license and insurance, and dispatch confirmed the vehicle was not reported as stolen.  We disagree.

[¶31]  "Generally, the driver must be allowed to proceed without further delay once the officer determines that the driver has a valid license *and is entitled to operate the vehicle*." *Damato v. State*, 2003 WY 13, ¶ 13, 64 P.3d 700, 706 (Wyo. 2003) (emphasis added). Confirming ownership or legal possession of the vehicle is a necessary component of an investigatory traffic stop.  *See id.*, ¶ 24, 64 P.3d at 709 (recognizing "proper documentation of ownership or legal possession of a vehicle can be crucial in ascertaining whether criminal activity is in progress.").  Although Mr. Horsley produced a valid driver's license

7

and proof of insurance, and dispatch verified the car was not reported as stolen, none of that information confirmed whether the vehicle was lawfully registered. *See* Wyo. Stat. Ann. §§ 31-4-101; -102 (2023).

[¶32] At the point dispatch confirmed the car was not stolen, Sergeant Thomson had not yet completed the original purpose for the traffic stop. *See Gibson v. State*, 2019 WY 40, ¶ 10, 438 P.3d 1256, 1258-59 (Wyo. 2019) (discussing an instance where the trooper had not finished the initial purpose for the traffic stop). Without a license plate or a registration document, Sergeant Thomson only had the handwritten bill of sale with Mr. Hanson's name. But Mr. Hanson denied purchasing the car and insisted they were only driving the car to test it out. Dispatch eventually confirmed the vehicle "was last registered to Erin Corun," but even that information did not reveal whether the registration was current. Under these circumstances, it was reasonable for Sergeant Thomson to continue investigating whether the car lacked registration or was operating under false registration documents.

[¶33] Mr. Hanson also argues Sergeant Thomson engaged in an unreasonable line of questioning leading up to his request to search the vehicle.[1] Specifically, he contends Sergeant Thomson's question, "[is there] anything in the vehicle that shouldn't be in the car" was unrelated to the purpose of the traffic stop. "During the traffic stop, an officer generally may not ask the detained motorist questions unrelated to the purpose of the stop, including questions about controlled substances, unless the officer has reasonable suspicion of other illegal activity." *Campbell v. State*, 2004 WY 106, ¶ 12, 97 P.3d 781, 785 (Wyo. 2004). The challenged question came at the conclusion of Mr. Hanson's interview and immediately before asking for consent to search the car. Sergeant Thomson had just asked a series of questions to Mr. Hanson about who owned the vehicle, his reason for possessing the car, and why his name appeared on the bill of sale. Such questions are generally proper at a traffic stop. *See Hembree v. State*, 2006 WY 127, ¶ 18, 143 P.3d 905, 910 (Wyo. 2006) (recognizing questions about a motorist's travel plans and authority to operate the vehicle are reasonable during a traffic stop) (citation omitted).

[¶34] We find that Sergeant Thomson's questioning was reasonable. The challenged question was the outgrowth of an increasing suspicion about criminal activity based on the dubious circumstances surrounding the bill of sale in Mr. Hanson's name. *See Negrette,* ¶ 18, 158 P.3d at 683-84 (finding an escalating line of questioning was reasonable as the officer discovered the registration was altered, the names given did not match, and irregularities surrounding the license plate and VIN). Following his individual interview with Mr. Hanson, Sergeant Thomson possessed an "objectively reasonable suspicion that criminal activity has occurred or is occurring." *O'Boyle*, ¶ 48, 117 P.3d at 414.

---

[1] Mr. Hanson's argument again rests, in part, on the claim that Sergeant Thomson had already completed the original purpose for his traffic stop and should have advised the occupants they were free to go. As we previously explained, Sergeant Thomson's investigation leading up to the search related to the original purpose for initiating the stop and had not yet concluded.

8

### B. Mr. Hanson's consent to search was voluntary.

[¶35] Mr. Hanson argues he did not voluntarily consent when asked for permission to search the vehicle.[2] Specifically, he contends his "um yea" response to the request was only acquiescence due to the number of armed uniformed officers on the scene when he provided his response.

[¶36] With respect to a citizen's right to be free from unreasonable searches and seizures, this Court has recognized:

> [A] waiver of constitutional rights under our constitution must appear by clear and positive testimony, and, if a search or seizure is based upon the proposition that consent was given, there should be no question from the evidence that consent was "really voluntary and with a desire to invite search [or further questioning], and not done merely to avoid resistance." Acquiescence and nonresistance have not been deemed sufficient under Wyoming law to establish consent.

*Seymour v. State*, 2008 WY 61, ¶ 19, 185 P.3d 671, 677 (Wyo. 2008) (citing *O'Boyle*, ¶ 38, 117 P.3d at 412). "Under both the United States and Wyoming Constitutions, we examine the totality of the circumstances to determine whether consent was voluntary." *Seymour*, ¶ 19, 185 P.3d at 677. We consider factors such as the demeanor of the law enforcement officer, whether the individual was told he could refuse the request, the presence of other law enforcement officers, the length of the detention, the nature of the questioning before consent was given, and other coercive factors. *Id.,* ¶ 19, 185 P.3d at 677 (citing *O'Boyle*, ¶¶ 40-42, 61, 117 P.3d at 413, 418).

[¶37] "The existence and voluntariness of a consent search is a question of fact to be decided by the trial judge in the light of all the attendant circumstances." *Grant v. State*, 2004 WY 45, ¶ 18, 88 P.3d 1016, 1020 (Wyo. 2004) (quoting *Stamper v. State*, 662 P.2d 82, 87 (Wyo. 1983)). Therefore, we "view the evidence in the light most favorable to the district court's determination." *Grant,* ¶ 20, 88 P.3d at 1020.

[¶38] The district court found the consent to search was not unduly coerced under the totality of the circumstances. Testimony revealed that prior to the request to search, Mr. Hanson was engaged in "congenial conversation" with another officer. The district court also acknowledged there were still outstanding concerns about who owned the car before

---

[2] On appeal, Mr. Hanson does not challenge whether he had authority to consent to a search of the vehicle.

Sergeant Thomson asked to search the vehicle. Finally, the district court found there was not an unreasonable delay in getting to the search.

[¶39] After reviewing the body camera footage in the light most favorable to the district court's determination, we conclude Mr. Hanson's consent was voluntary. Before Mr. Hanson was interviewed, he is seen and heard in the video standing next to Sergeant Thomson's patrol vehicle conversing at ease with another officer. Although Sergeant Thomson did not inform Mr. Hanson that he was free to decline the search, we note Sergeant Thomson paused, asked Mr. Hanson if he could address him by his first name, and proceeded to ask if it was okay to look in the car. Sergeant Thomson's demeanor was not coercive during this interaction. *See Hembree v. State*, 2006 WY 127, ¶ 20, 143 P.3d 905, 911 (Wyo. 2006) (considering "the way the officer phrased the request for permission to search" as a factor in assessing voluntary consent).

[¶40] Because Sergeant Thomson's questioning during the initial stages of the traffic stop was reasonable, the State does not bear a heavier burden when demonstrating whether Mr. Hanson's consent was voluntary. *See Campbell*, ¶ 14, 97 P.3d at 785 (stating "[t]he government bears the burden of proving the voluntariness of consent, and that burden is heavier when consent is given after an illegal stop.") (citation omitted). Armed and uniformed officers are present at every traffic stop, and if that factor alone was "sufficient to invalidate the voluntariness of a consent search, no consent would ever be voluntary." *Marinaro v. State*, 2007 WY 123, ¶ 11, 163 P.3d 833, 836 (Wyo. 2007). Here, Mr. Hanson not only interacted casually with the other officers before giving his consent, but after giving his consent, he returned to the rear of the vehicle and continued his conversation with Sergeant Thomson's partner. The totality of the circumstances leads us to conclude that Mr. Hanson's consent to search was voluntary.

[¶41] The traffic stop and subsequent request to search the vehicle did not violate Mr. Hanson's constitutional rights. Accordingly, the district court did not err in denying Mr. Hanson's motion to suppress evidence collected from the stop.

## II. The district court did not abuse its discretion when it denied Mr. Hanson's motion to suppress evidence as a discovery sanction.

[¶42] Mr. Hanson also challenges the district court's denial of his motion to suppress evidence that the State produced after the discovery deadline. Specifically, he contends the district court erred by declining to exclude late lab results, which confirmed the presence of methamphetamine residue in paraphernalia found during the search. The State concedes it did not produce the State Crime Lab results within the district court's discovery deadline, but maintains the delay was unintentional. It also argues its untimely production did not prejudice Mr. Hanson because the residue had already tested presumptively positive for methamphetamine. Our review of this issue is for an abuse of discretion. *Naple*, ¶ 24, 143 P.3d at 365.

[¶43] The district court has discretion to determine what, if any, sanctions are appropriate for failing to comply with discovery responsibilities or its pre-trial orders. *Craft v. State*, 2013 WY 41, ¶ 14, 298 P.3d 825, 830 (Wyo. 2013) (citing W.R.Cr.P. 16(d)(2)). When considering the appropriateness of a sanction, the district court considers: (1) the reasons the State delayed producing the requested materials, including whether or not the prosecutor acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the delay; and (3) the feasibility of curing the prejudice with a continuance. *Naple*, ¶ 24, 143 P.3d at 365. Once the district court weighs these factors, it should impose the least severe sanction which will ensure the State's compliance with its discovery responsibilities. *Id.* (citing *United States v. Dennison*, 891 F.2d 255, 259-60 (10th Cir. 1989)). A district court's failure to consider the proper factors in determining whether a particular sanction is warranted amounts to an abuse of discretion. *Id.*, ¶ 28, 143 P.3d at 367 (citing *Lawson*, 994 P.2d at 947)).

[¶44] In the hearing on Mr. Hanson's motion to suppress the untimely lab report, the district court considered the factors from *Naples*. First, the district court accepted law enforcement's explanation for the late disclosure and determined the delay resulted from negligence, not bad faith. Next, the district court weighed the prejudice to Mr. Hanson and concluded the delay was prejudicial but did not constitute undue prejudice. Finally, the district court acknowledged a continuance was warranted but respected Mr. Hanson's decision not to waive his right to a speedy trial.

[¶45] We conclude the district court did not abuse its discretion in denying the motion to suppress. First, the district court was in the best position to assess the proffered reasons for delay and whether there was bad faith. In addition, Mr. Hanson did not allege bad faith and does not argue bad faith on appeal. Second, it was reasonable for the district court to conclude Mr. Hanson was not unduly prejudiced by the late disclosure. In this instance, the late lab results did not impede Mr. Hanson from mounting a defense to the possession charge. From the initial Information to the Amended Information, Mr. Hanson was aware he was charged with possessing methamphetamine. Finally, it was reasonable for the district court to decline to strike evidence of the lab report after Mr. Hanson made it clear that he did not want a continuance.

[¶46] "The cure for a violation of the discovery rules must be proportional to the prejudice." *Requejo*, ¶ 18, 439 P.3d at 752. While dismissal remains the most severe sanction for a discovery violation, suppression is often used for a violation that is more severe than what would typically warrant a continuance. *See Naple*, ¶ 28, 143 P.3d at 367 (discussing how courts may craft a sanction in response to a discovery violation). Having found Mr. Hanson was not unduly prejudiced by the discovery violation, it was reasonable for the district court to deny his request to suppress the evidence. *See Emerson v. State*, 988 P.2d 518, 525 (Wyo. 1999) (affirming district court's denial of a motion to suppress

evidence where there was no evidence the government attempted to use the late disclosure to gain a tactical advantage and the defendant was not materially prejudiced).

[¶47] The district court considered the appropriate factors in response to the State's discovery violation and did not abuse its discretion when it denied Mr. Hanson's motion to suppress the lab results.

## CONCLUSION

[¶48] Sergeant Thomson's continued questioning during the traffic stop was reasonable under the circumstances and Mr. Hanson voluntarily consented to a search of the vehicle. Therefore, the district court did not err when it denied Mr. Hanson's motion to suppress the evidence collected from the consent search.

[¶49] The district court also did not abuse its discretion when it denied Mr. Hanson's motion to suppress the State Crime Lab results produced after the discovery deadline.

[¶50] Affirmed.